FILED

AUG 0 7 2017

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY  RMC  DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN ALLEN SCHALIK,<br><br>　　　　　　　　　　Plaintiff,<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>　　　　　　　　　　Defendant. | Case No.: 16cv2059-W(KSC)<br><br>**REPORT AND RECOMMENDATION RE CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>[Doc. Nos. 14, 15.] |

Pursuant to Title 42, United States Code, Section 405(g), of the Social Security Act ("SSA"), plaintiff filed a Complaint to obtain judicial review of a final decision by the Commissioner of Social Security ("Commissioner") denying him disability benefits.[1] [Doc. No. 1.]

---

[1] Title 42, United States Code, Section 405(g), provides as follows: "Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party . . . may obtain a review of such decision by a civil action . . . brought in the district court of the United States. . . . The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

1

Presently before the Court are: (1) plaintiff's Motion for Summary Judgment and/or Remand [Doc. No. 14]; (2) defendant's Cross-Motion for Summary Judgment and Opposition to plaintiff's Motion for Summary Judgment [Doc. No. 15]; (3) plaintiff's Reply; and (4) the Administrative Record ("AR") [Doc. No. 12]. Plaintiff's Motion for Summary Judgment challenges the denial of his claim for disability benefits under the SSA on technical grounds, and he does contend that the decision to deny him disability benefits lacks a factual basis or is unsupported by substantial evidence. As a result, this Report and Recommendation only includes factual background necessary to explain the Court's analysis and does not include a detailed summary of the medical evidence in the Administrative Record. After careful consideration of the moving and opposing papers, as well as the Administrative Record and the applicable law, it is RECOMMENDED that the District Court DENY plaintiff's Motion for Summary Judgment and/or Remand [Doc. No. 14] and GRANT defendant's Cross-Motion for Summary Judgment [Doc. No. 15].

## I. *Background and Procedural History*.

On February 19, 2013, plaintiff applied for disability insurance benefits claiming he was unable to work as of June 22, 2012. [AR 229-230.] At the time of his application, plaintiff reported that he was unable to work because of multiple sclerosis, severe narcolepsy, bi-polar disorder, and depression. [AR 243-244.]

On July 9, 2013, plaintiff completed a work history form indicating that he most recently worked as a senior software engineer from April 2012 through June 2012. Plaintiff also indicated on the work history form that he had worked in various positions in the software industry since June of 1999. [AR 256-261.]

On July 29, 2013, plaintiff completed a form entitled "Function Report – Adult" indicating he was severely impaired. [AR 273-290.] Plaintiff claimed that he had been a software developer for over fourteen years but was having difficulty concentrating and remembering how to use software and would fall asleep while using his computer. He said he was unable to stay awake for more than a few hours a day and could sleep for days at a time, but would then wake up feeling exhausted and tired. [AR 273-274, 278-

2

16cv2059-W(KSC)

279.] While awake, he was able to take care of personal needs, such as showering, dressing, making simple meals, eating, shopping, and calling his doctors. [AR 274-275.] His parents ordered and paid for groceries to be delivered to him and took care of paying his bills. [AR 276.] Most days, plaintiff said he did not go outside. He claimed his social activities were very limited because of his condition. [AR 277-278.] Plaintiff also completed a Seizure Questionnaire form on August 8, 2013. On the form, plaintiff represented that he had seizures regularly about one to three times per week since 2007 but was taking seizure medication. [AR 284-285.]

On August 12, 2013, plaintiff's claim for disability benefits was denied because it was determined based on the medical records submitted in support of the claim that plaintiff's condition was not severe enough to prevent him from working. [AR 101-102, AR 122-125.] Plaintiff requested reconsideration, but his request was denied on December 16, 2013. [AR 126, 104-118, 127-131.] On January 23, 2014, plaintiff requested a hearing before an Administrative Law Judge (ALJ). [AR 132-133.]

A hearing before an ALJ was held on January 26, 2015, and the ALJ heard testimony from plaintiff and a vocational expert. [AR 67-92.] Plaintiff was represented at the hearing by a "non-attorney representative." [AR 69-70.] Plaintiff testified that he was 43 years old and had not worked since June 2012, because he could not stay awake. [AR 72-73, 77-79.]

A supplemental hearing before the ALJ was held on April 28, 2015. [AR 38.] During the supplemental hearing, the ALJ stated on the record that he believed this second hearing was necessary, because he needed input from an "expert neurologist" to help him make a fair decision. [AR 41.] During this second hearing, Dr. James Haynes, a neurologist [AR 195], testified based on this review of the evidence that "the whole picture" of plaintiff's medical condition is "colored" by his use of methamphetamine. Dr. Haynes also testified that plaintiff's involvement with methamphetamine adversely affected his credibility, specifically stating as follows: "[W]ith methamphetamine in the picture over and over again I don't know how you can claim to be disabled on the basis

of a sleep issue. I just think there's too much self-defeating behavior there to allow for any – any proper treatment or diagnosis." [AR 43-44.] In addition, Dr. Haynes testified that a genetic test for narcolepsy was negative and a diagnosis of "idiopathic hypersomnia," a less serious condition, was supported by plaintiff's statements and the results of a sleep study included in the medical records. [AR 43, 46-47.]

On June 3, 2015, the ALJ issued a written opinion concluding that plaintiff did not qualify for disability insurance benefits under the SSA. [AR 11-35.] On August 6, 2015, plaintiff requested review of the ALJ's decision by the Appeals Council. [AR 10.] However, on February 2, 2016, the Appeals Council denied plaintiff's request for review. [AR 4-6.] Plaintiff then filed his Complaint in this action on August 16, 2016. [Doc. No. 1.]

## II. *Standards of Review – Final Decision of the Commissioner.*

The final decision of the Commissioner must be affirmed if it is supported by substantial evidence and if the Commissioner has applied the correct legal standards. *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). Under the substantial evidence standard, the Commissioner's findings are upheld if supported by inferences reasonably drawn from the record. *Id.* If there is evidence in the record to support more than one rational interpretation, the District Court must defer to the Commissioner's decision. *Id.* "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). "In determining whether the Commissioner's findings are supported by substantial evidence, we must consider the evidence as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "Summary

4

judgment motions, as defined by Fed.R.Civ.P. 56, contemplate the use of evidentiary material in the form of affidavits, depositions, answers to interrogatories, and admissions. In Social Security appeals, however, the Court may 'look no further than the pleadings and the transcript of the record before the agency,' and may not admit additional evidence. *Morton v. Califano*, 481 F.Supp. 908, 914 n. 2 (E.D. Tenn.1978); 42 U.S.C. § 405(g). Therefore, although summary judgment motions are customarily used [in social security cases], and even requested by the Court or Magistrate, such motions merely serve as vehicles for briefing the parties' positions, and are not a prerequisite to the Court's reaching a decision on the merits." *Kenney v. Heckler*, 577 F.Supp. 214, 216 (N.D. Ohio 1983).

### *Discussion*

### I. *The ALJ's Five-Step Disability Analysis.*

To qualify for disability benefits under the SSA, an applicant must show that he or she is unable to engage in any substantial gainful activity because of a medically determinable physical or mental impairment that has lasted or can be expected to last at least 12 months. 42 U.S.C. § 423(d). The Social Security regulations establish a five step sequential evaluation for determining whether an applicant is disabled under this standard. 20 C.F.R. § 404.1520(a); *Batson v. Comm'r of the Social Security Admin.*, 359 F.3d at 1193, 1194.

At step one, the ALJ must determine whether the applicant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Here, the ALJ concluded plaintiff has not engaged in "substantial gainful activity" since June 22, 2012, the onset date of his alleged disability. [AR 16.]

At step two, the ALJ must determine whether the applicant is suffering from a "severe" impairment within the meaning of Social Security regulations. 20 C.F.R. § 404.1520(a)(4)(ii). The Ninth Circuit has described the ALJ's step-two inquiry as "a *de minimis* screening device to dispose of groundless claims." *Edlund v. Massanari*, 253 F.3d 1152, 1158 (9th Cir. 2001), quoting *Smolen v. Chater*, 80 F.3d at 1290. "An

impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). For example, a slight abnormality or combination of slight abnormalities that only have a minimal effect on the applicant's ability to perform basic work activities will not be considered a "severe" impairment. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). Examples of basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering simple instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations, and dealing with changes in a routine work setting. 20 C.F.R. § 404.1522(b). "If the ALJ finds that the claimant lacks a medically severe impairment, the ALJ must find the claimant not to be disabled." *Webb v. Barnhart*, 433 F.3d at 686.

In this case, the ALJ concluded at step two that plaintiff has the following severe impairments: "seizure disorder; sleep disorder; and anxiety." [AR 16.] Although plaintiff stated in his disability application that he had multiple sclerosis and narcolepsy, the ALJ did not list these as "severe impairments." [AR 16.] Plaintiff was diagnosed with multiple sclerosis, but it was later determined that he did not actually meet the diagnostic criteria for this condition. [AR 16-17, 25.] A diagnosis of narcolepsy was also not confirmed. As the ALJ noted in this decision, "HLA typing was negative for a classical narcolepsy antigen. . . ." [AR 25.] Rather, the record indicates and the ALJ essentially agreed that plaintiff probably had a sleep disorder known as "idiopathic hypersomnia." [AR 25-26.] The ALJ further concluded plaintiff had other diagnosed conditions that were "not severe," because there was insufficient evidence "to establish severe physical impairments related to them." [AR 16.] These non-severe conditions included hypertension, irritable bowel syndrome, and ulcerative colitis. [AR 16.] Plaintiff does not disagree with the ALJ's findings at step two of the disability analysis.

If there is a severe impairment, the ALJ must then determine at step three whether it meets or equals one of the "Listing of Impairments" in the Social Security regulations.

20 C.F.R. § 404.1520(a)(4)(iii). If the applicant's impairment meets or equals a Listing, he or she must be found disabled. *Id.* Here, the ALJ concluded that plaintiff does not have an impairment or combination of impairments that meets or equals the severity in the Listing of Impairments. [AR 17.] Although the ALJ considered whether plaintiff met the criteria in several of the Listings, the focus of his analysis was Listing 12.06, anxiety related disorders. [AR 17.] Currently, the requirements of Listing 12.06 for anxiety related disorders are as follows:

    A.    Medically documented findings of . . . :

    1.    Anxiety disorder, characterized by three or more of the following:

        a.    Restlessness;
        b.    Easily fatigued;
        c.    Difficulty concentrating;
        d.    Irritability;
        e.    Muscle tension; or
        f.    Sleep disturbance.

    2.    Panic disorder or agoraphobia, characterized by one or both:

        a.    Panic attacks followed by a persistent concern or worry about additional panic attacks or their consequences; or
        b.    Disproportionate fear or anxiety about at least two different situations . . .

    \* \* \* \*

AND

    B.    Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    1.    Understand, remember, or apply information;

    2.    Interact with others;

    3.    Concentrate, persist, or maintain pace;

4. Adapt or manage oneself;

OR

C. Your mental disorder in this listing category is 'serious and persistent;' that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder; and

2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life.

20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.06.

To reach his conclusion at step three of the analysis, the ALJ noted there was no evidence to establish that plaintiff met the criteria in "paragraph C." [AR 19.] The remainder of his analysis focused on the "paragraph B" criteria. Noting that he was giving plaintiff "the benefit of the doubt," the ALJ concluded based on the evidence that plaintiff had only "mild restriction" in activities of daily living; "moderate difficulties" in social functioning; and "moderate difficulties" in concentration, persistence, or pace. [AR 17-18.] In other words, plaintiff did not meet the severity requirements in "paragraph B" of Listing 12.06, because he had only mild or moderate rather than "extreme" or "marked" difficulties in the three areas of inquiry under paragraph B. 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.06. Plaintiff does not dispute the ALJ's findings at step three.

If an impairment does not meet or equal a Listing, the ALJ must make a step four determination of the claimant's residual functional capacity based on all impairments, including impairments that are not severe. 20 C.F.R. § 404.1520(e), § 404.1545(a)(2). "Residual functional capacity" is "the most [an applicant] can still do despite [his or her]

limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ must determine whether the applicant retains the residual functional capacity to perform his or her past relevant work. 20 C.F.R. § 404.1520(a)(5)(i). If the applicant cannot perform past relevant work, the ALJ at step five must consider whether the applicant can perform any other work that exists in the national economy. 20 C.F.R. § 404.1520(a)(5)(ii). While the applicant carries the burden of proving eligibility at steps one through four, the burden at step five rests on the agency. *Celaya v. Halter*, 332 F.3d 1177, 1180 (9th Cir. 2003).

More specifically, a residual functional capacity assessment considers a claimant's "ability to meet the physical, mental, sensory, and other requirements of work...." 20 C.F.R. § 404.1545(a)(4). The physical demands of work activities are "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)...." 20 C.F.R. § 404.1545(b). Mental activities considered in a residual functional capacity assessment include the abilities to understand, remember, carry out instructions, and respond appropriately to supervisors, co-workers, and pressures in a work setting. 20 C.F.R. § 404.1545(c). Other limiting factors, such as epilepsy, vision, hearing, and pain or other symptoms, may also be considered in a residual functional capacity assessment. 20 C.F.R. § 404.1545(d)&(e). After functional limitations or restrictions are assessed on a function-by-function basis, an individual's residual functional capacity is expressed in terms of exertional levels: "sedentary, light, medium, heavy, and very heavy." Soc. Sec. Ruling 96-8p (July 2, 1996).

Here, the ALJ concluded that plaintiff has the residual functional capacity to perform light work with some environmental limitations. [AR 20.] With regard to limitations, the ALJ concluded plaintiff did not have the capacity to frequently climb ramps and stairs, balance, stoop, kneel, crouch, or crawl and should avoid exposure to unprotected heights, hazardous machines, open water, and operation of motor vehicles. [AR 20.] It was the ALJ's view that these environmental limitations were justified based on plaintiff's seizure disorder and sleep disorder. [AR 27.] Citing substantial evidence

related to plaintiff's mental status, the ALJ concluded the record did not contain enough evidence to indicate plaintiff was "functionally unable to work" because of his seizure disorder, sleep disorder, and anxiety. [AR 21-24.] Finally, the ALJ cited substantial evidence throughout his analysis that supports his conclusion that plaintiff's claims of disabling symptoms were not credible. [AR 22-28.]

Based on the conclusion that plaintiff has the residual functional capacity for light work, the ALJ further concluded at step four that plaintiff is capable of performing his past relevant work as a senior software engineer. [AR 28.] This finding was based on testimony by two vocational experts. First, both vocational expert's testified that the job of senior software engineer is considered sedentary, skilled work. [AR 29; 62-63, 89-90.] Comparing plaintiff's residual functional capacity for light work with environmental limitations to the mental and physical demands of a senior software engineer, the vocational experts testified that plaintiff retains the capacity to perform the tasks of a senior software engineer. [AR 29, 62-63, 89.]

Alternatively, the ALJ concluded at step five that plaintiff is capable of performing other work that exists in significant numbers in the national economy. [AR 29-30.] This finding was based on plaintiff's residual functional capacity; his age, education, and work experience; and the vocational expert's testimony that such an individual "would be able to perform the requirements of a wide range of representative occupations. . . ." [AR 30.] In addition, considering that plaintiff could not "perform the full range of light work" because of environmental limitations, the ALJ noted that plaintiff would still be able "to perform the requirements of a wide range of representative occupations" that exist in significant number in the national economy, including those limited to "*simple repetitive tasks.*" [AR 29-30.] As a result, the ALJ concluded that a finding of "not disabled" was appropriate under applicable regulations. [AR 30.]

II. *Alleged Error in the ALJ's Disability Analysis.*

In his Motion for Summary Judgment, plaintiff argues that the case should be reversed or remanded because the ALJ's residual functional capacity assessment is

flawed and the ALJ's purported error is not harmless. Plaintiff contends that the ALJ erred, because he found (at steps two and three) that plaintiff suffered from "severe" impairments that resulted in moderate limitations in social functioning and in concentration, persistence and pace, but then failed to include these limitations in his residual functional capacity assessment at steps four and five or to present them in a hypothetical to the vocational expert at steps four and five. [Doc. No. 14, at pp. 4-8; Doc. No. 17, at pp. 4-5.] Stated another way, plaintiff contends that the ALJ's analysis violates the following requirement found at 20 C.F.R. § 404.1545(e):

> When you have a severe impairment(s), but your symptoms, signs, and laboratory findings do not meet or equal those of a listed impairment in appendix 1 of this subpart, we will consider the limiting effects of all your impairment(s), even those that are not severe, in determining your residual functional capacity.

[Doc. No. 17, at p. 5, citing 20 C.F.R. § 404.1545(e).]

In support of his Motion for Summary Judgment, plaintiff cites a Program Operations Manual System (POMS) publication that is available on the Social Security Administration's website entitled DI 25020.010 Mental Limitations. [Doc. No. 14, at pp. 4-5.] However, plaintiff does not explain how this publication supports the argument in his Motion for Summary Judgment or how it even relates to the facts or evidence in his case. This publication merely lists the mental demands and abilities needed for different levels of work. As a result, plaintiff's citation to this publication does not support his argument that the ALJ's disability analysis is flawed so the case should be reversed or remanded for further proceedings.

Defendant contends there was no error in the ALJ's five-step disability analysis. Rather, it is defendant's view that plaintiff misreads the relevant standards and/or the ALJ's decision. According to defendant, "[p]laintiff's argument incorrectly conflates the ALJ's severity evaluation at step three with the ALJ's [residual functional capacity] assessment" when, "in fact, they are distinct steps of the sequential evaluation based on different standards." [Doc. No. 16-1, at p. 10.]

In this Court's view, plaintiff's argument is based on a misunderstanding of the applicable regulations and an unreasonable interpretation of the ALJ's decision. It is true, as plaintiff contends, that the ALJ concluded at step two that plaintiff suffered from "severe" impairments (*i.e.*, seizure disorder; sleep disorder; and anxiety). [AR 16-17.] It is also true that the ALJ concluded at step three that plaintiff suffered from "severe" impairments that resulted in mild restrictions in his activities of daily living; and moderate limitations in his social functioning and in his concentration, persistence and pace. [AR 17-19.] The ALJ also concluded at step three that plaintiff's mental limitations did not satisfy the "paragraph B" or "paragraph C" criteria of Listing 12.06, and he did not have "an impairment or combination of impairments" that met or medically equaled the severity of any of the "listed impairments" in 20 C.F.R., Part 404, Subpart P, Appendix 1. [AR 17-19.]

Contrary to plaintiff's argument, the ALJ's findings concerning mild to moderate restrictions in mental functioning at step three did not require the ALJ to automatically reach a conclusion at steps four and five that these mild to moderate restrictions had a significant effect on plaintiff's residual functional capacity. Instead, the ALJ was free to examine the medical evidence in the record and conclude that these mild to moderate limitations did not affect plaintiff's residual functional capacity for work at a particular level. As the ALJ noted in his decision, at the end of his analysis at step three, "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the List of Impairments (SSR 96-8p)." [AR 19.]

In this regard, the ALJ did not fail to consider plaintiff's mental limitations in his residual functional capacity assessment at steps four and five. Rather, the ALJ's

12

analysis at steps four and five includes a detailed assessment of plaintiff's ability to function physically and mentally. [AR 20-28.] Based on this detailed assessment, the ALJ concluded plaintiff did not have any physical or mental limitations that affected his ability to perform a wide range of light work, as well as his past relevant work as a senior software engineer, which is considered sedentary, skilled work. [AR 28-29.] By contrast, the ALJ did find as part of the residual functional capacity assessment that certain environmental limitations were appropriate because of plaintiff's seizure disorder and sleep disorder (*i.e.*, avoiding frequent climbing, balancing, stooping, kneeling, crouching or crawling and exposure to unprotected heights, hazardous machines, open water, and operation of motor vehicles). [AR 20, 27.] In reaching his conclusion as to plaintiff's residual functional capacity, the ALJ cited substantial evidence from plaintiff's medical records. Many of these records specifically relate to mental functioning, and the ALJ noted there were "few records to support significant limitations." [AR 22-28.] For example, the ALJ cited medical evidence in the record indicating plaintiff was "generally functioning pretty well;" had "some meaningful interpersonal relationships;" "exhibited normal concentration during exams;" and had intact cognition, memory, thought process, and thought content. [AR 21-23.] In addition, evidence suggested that plaintiff's anxiety was under control with medication; that he was responding reasonably well to medication he was taking to address daytime sleepiness; that he led an "active life;" and that his daily activities were consistent with an ability to do "light work." [AR 23.] Having concluded that plaintiff's mild to moderate mental restrictions did not adversely affect his residual functional capacity to perform light work or his past relevant work, it was unnecessary for the ALJ to include these restrictions in any of the hypotheticals presented to the vocational expert.

In sum, the ALJ's residual functional capacity assessment is not flawed as plaintiff argues in his Motion for Summary Judgment. As plaintiff contends, the ALJ did find at step three that plaintiff had mild difficulties in his activities of daily living and moderate difficulties in social functioning and concentration, persistence, or pace. However, he

appropriately concluded at step four based on substantial evidence in the record that these mild to moderate limitations did not have a significant effect on plaintiff's residual functional capacity at steps four and five to perform light work, his past relevant work as a senior software engineer, or other work that is available in the national economy. Having concluded there was no significant effect on plaintiff's residual functional capacity, it was not necessary for the ALJ to include these limitations in his step four and step five hypotheticals addressed to the vocational experts at the two hearings held before the ALJ. Therefore, based on the parties' moving and opposing papers and the Administrative Record, it is this Court's view that the ALJ applied the correct legal standards and based his decision to deny benefits on substantial evidence in the record.

### III. *Conclusion.*

Based on the foregoing, it is RECOMMENDED that the District Court: (1) DENY plaintiff's Motion for Summary Judgment and/or Remand [Doc. No. 14]; (2) GRANT defendant's Cross-Motion for Summary Judgment [Doc. No. 15]; and (3) enter judgment in defendant's favor.

This Report and Recommendation is submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1(d). Within fourteen (14) days after being served with a copy of this Report and Recommendation, "any party may serve and file written objections." 28 U.S.C. § 636(b)(1)(B)&(C). The document should be captioned "Objections to Report and Recommendation." The parties are advised that failure to file objections within this specific time may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1156–57 (9th Cir.1991).

Dated: August 7, 2017

Hon. Karen S. Crawford
United States Magistrate Judge